UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES G. WALKER,

      Plaintiff,

v.                                                               Civil Action No. 3:15cv717

MARY WASHINGTON HEALTHCARE,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Mary Washington Healthcare's Motion to Dismiss (the "Partial Motion to Dismiss")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 4). Plaintiff James G. Walker, proceeding *pro se*,[3] has responded to the Partial Motion to Dismiss. (ECF No. 8.) Mary Washington Healthcare has replied. (ECF No. 9.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[4] For the reasons that follow, the Court will: (1) grant the Partial Motion to Dismiss, (ECF No. 4); (2) dismiss Count I; and, (3) order

---

[1] Mary Washington Healthcare purports to seek dismissal of the entire Complaint, but argues only that it cannot face liability for Walker's constitutional claims. Walker brings three claims, only one of which appears to allege a violation of the United States Constitution. (*See* Compl. ¶ 14, ECF No. 1 (asserting Count I under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment).) The Court will therefore construe the motion to dismiss as one that is partial in nature.

[2] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[3] Mary Washington Healthcare provided Walker with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Walker to file an amended complaint that sets forth the factual and legal bases for Counts II and III.

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2

defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

Generally, district courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff, however, must nevertheless allege a cause of action. *Id.* (citing *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

## II. Procedural and Factual Background

### A. Summary of Allegations in the Amended Complaint[5]

Walker worked as a pharmacist for Mary Washington Healthcare from August 4, 2008, until his termination on February 25, 2015. Walker typically worked the night shift, from 9:00 p.m. to 7:00 a.m. As a pharmacist, Walker supervised technicians. During the initial period of Walker's employment,[6] he had "numerous problems with two night shift technicians," both of whom were white. (Compl. ¶ 10.) According to Walker, "Colleen Peace of human resources and the pharmacy management" supported the two white technicians. (*Id.*)

---

[5] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Complaint to be true and views them in the light most favorable to Walker. *See Matkari*, 7 F.3d at 1134.

[6] The Complaint does not disclose the date or dates on which Walker's problems with the night shift technicians occurred.

3

On January 16, 2012, Linda Koch, Administrative Director of the Pharmacy Department, sent Walker an email threatening to terminate him if he did not complete a computer learning module. Koch sent this email while Walker was off-duty, forcing him to complete the module on his personal time. Walker alleges that no other pharmacist received a similar threat of terminated employment for failure to complete this task. On the other hand, when a white pharmacist failed to complete "something of this nature," Mary Washington Healthcare provided him extra time to complete the assignment while on duty. (*Id.* ¶ 11.)

On March 5, 2012, Walker applied for the position of night shift pharmacist at Stafford Hospital. Although Walker had seniority and more experience, Koch hired a white pharmacist, Noah Bell, for the position. On February 25, 2015, Becky Womack, Director of Pharmacy; Thoa Nguyen, Operations Manager of Pharmacy; and Peace fired Walker "for errors." (*Id.* ¶ 13.) Mary Washington Healthcare fired Walker without first suspending him. In contrast, when Mary Washington Healthcare fired Mike Checka, a white pharmacist, he received numerous suspensions before termination. Likewise, Mary Washington Healthcare suspended Brittney Black, a white technician, numerous times before firing her.

B.  **Procedural History**

On November 24, 2015, Walker filed the Complaint in this Court, alleging discrimination and violations of his constitutional rights. Walker alleges that this case "is a civil action under 42 U.S.C. § 1983 seeking damages and injunctive relief against [Mary Washington Healthcare] for committing acts, under color of law, with the intent and for the purpose of depriving [him] of rights secured under the Constitution and laws of the United States." (Compl. ¶ 1.) Walker more specifically organizes his claims as follows:

| | |
|---|---|
| Count I: | "Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988[7]: Violation of Fourteenth Amendment[8] Rights" |
| Count II: | "Harassment, which creates a hostile working environment"; and, |
| Count III: | "Unlawful termination of employment." |

The Court liberally construes Walker's Complaint to bring not only a constitutional claim pursuant to 42 U.S.C. § 1983,[9] as he notes in the Complaint's opening paragraph and argues throughout the briefing submitted to this Court, but also claims for harassment and wrongful

---

[7] Section 1988 allows "the prevailing party" in an "action or proceeding to enforce a provision of . . . [42 U.S.C. §] 1983" to collect "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

[8] The Fourteenth Amendment to the United States Constitution provides, in part:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

[9] Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

5

termination on the basis of race discrimination, presumably under Title VII of the Civil Rights Act of 1964.[10]

In response to the Complaint, Mary Washington Healthcare filed the Partial Motion to Dismiss. (ECF No. 4.) Mary Washington Healthcare limits its briefing to the contention that it cannot be liable for Walker's § 1983 claims because Mary Washington Healthcare does not constitute a state actor. Mary Washington Healthcare, the counseled party in this matter, does not address Walker's claims to the extent they allege anything but § 1983 claims—despite asking for dismissal of the entire Complaint. Walker responded, (ECF No. 8), and Mary Washington Healthcare replied. (ECF No. 9.) The matter is ripe for disposition. For the reasons that follow, the Court will grant the Partial Motion to Dismiss. The Court will dismiss Count I of the Complaint.

### III. Analysis

The Court will grant Mary Washington Healthcare's Partial Motion to Dismiss. The Court will dismiss Walker's § 1983 claim because, even assuming the well-pleaded factual allegations in the Complaint to be true and viewing them in the light most favorable to Walker, the Court cannot find that Mary Washington Healthcare acted under the color of state law.

---

[10] Title VII of the Civil Rights Act of 1964 prohibits discrimination by covered employers on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e *et seq.* Walker might also allege his harassment and wrongful termination claims under 42 U.S.C. § 1981. Section 1981 grants all persons within the United States equal rights "to make and enforce contracts." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

Rather than speculate about the bases for Walker's harassment and wrongful termination claims, the Court will order Walker to file an amended complaint that clearly articulates the facts supporting his claims and the law allegedly violated, including, when appropriate, the statutory provisions invoked.

### A. Walker Does Not Plausibly Allege That Mary Washington Healthcare Acted Under the Color of State Law

Walker fails to state a claim upon which relief can be granted on Count I because he does not plausibly allege that Mary Washington Healthcare acted under the color of state law. Walker brings his Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983, which provides "a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To state a claim for relief under § 1983, Walker must allege that Mary Washington Healthcare "(1) deprived [him] of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)). Because the Constitution applies only to government action, and not private conduct, Walker must allege that Mary Washington Healthcare constitutes a "state actor," or acted "under color of state law."[11] *Id.* at 180–81 (citations omitted). The Complaint falls far short of plausibly alleging this fundamental prerequisite.

The United States Court of Appeals for the Fourth Circuit has "observed that merely private conduct, no matter how discriminatory or wrongful[,] fails to qualify as state action." *Id.* at 181 (citing *Mentavlos*, 249 F.3d at 310) (internal quotation marks omitted). "This is so, in part, to preserve[ ] an area of individual freedom by limiting the reach of federal law and avoid[ing] impos[ition] [up]on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id.* (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S.

---

[11] "The statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).

614, 619 (1991)) (internal quotation marks omitted). Thus, "[p]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999)).

On the other hand, "'the deed of an ostensibly private organization or individual' may at times demand to be treated 'as if a State has caused it to be performed.'" *Mentavlos*, 249 F.3d at 310 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). In particular, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (citations and internal quotation marks omitted). In the end, "no specific formula" guides the Court's analysis in determining the existence of state action: "'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Philips*, 572 F.3d at 182 (alteration in original) (quoting *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006)).

The Complaint's only allegation purporting to demonstrate some sort of nexus between the Commonwealth of Virginia and Mary Washington Healthcare is that Mary Washington Healthcare "owns and operates two hospitals and receives federal and state money for taking care of sick people and is therefore impressed with a Fourteenth Amendment duty." (Compl. ¶ 6.) Funding alone, however, does not establish that Mary Washington Healthcare's conduct can be fairly attributable to the Commonwealth. *See Mentavlos*, 249 F.3d at 319 ("While substantial state assistance is generally a factor to be considered in determining whether the state has coerced or significantly encouraged private action, a private party's dependence upon the state for assistance, even if substantial, does not transform its actions into actions of the state

. . . .") (citations omitted); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 840–41 (1982) (holding that a private school's near-total dependence upon state funds did not render its employee discharge decisions acts of the state).

In the hospital context in particular, the Fourth Circuit has held that the "acceptance of patients receiving Medicare and Medicaid benefits does not make the accepting hospital's actions attributable to the state." *Modaber v. Culpeper Mem'l Hosp., Inc.*, 674 F.2d 1023, 1026–27 (4th Cir. 1982). Following *Modaber*, courts within the Fourth Circuit have repeatedly confirmed that establishing "state action" at a private hospital "requires more than a mere showing that the hospital receives state and federal funding." *Jane v. Bowman Gray Sch. of Med.-N.C. Baptist Hosp.*, 211 F. Supp. 2d 678, 690 (M.D.N.C. 2002) (granting summary judgment on § 1983 claims against Wake Forest University and its hospital system because the plaintiff could not produce any evidence that the defendants should be treated as public actors); *see also Crussiah v. Attia*, No. PX-15-2516, 2016 WL 3997315, at *5 (D. Md. July 26, 2016) (granting motion to dismiss where plaintiff brought § 1983 claims against private physicians who shared a close nexus with hospitals that received government funding).[12]

Walker points to no case, and the Court sees none, suggesting that a private entity's conduct may be attributable to a state merely because that state funded or funds the private

---

[12] In the same vein, other federal courts have held that former hospital employees may not challenge a hospital's employment decision pursuant to § 1983. *See, e.g., Ahmed v. Berkshire Med. Ctr., Inc.*, No. CIV.A. 94-30250-FHF, 1998 WL 157016, at *10–11 (D. Mass. Mar. 31, 1998) (granting summary judgment on plaintiff's § 1983 claims against a private hospital because the hospital's actions in terminating plaintiff's residency did not rise to the level of state action), *aff'd*, 201 F.3d 426 (1st Cir. 1999); *Benjamin v. Aroostook Med. Ctr.*, 937 F. Supp. 957, 970–71 (D. Me. 1996) (granting summary judgment on plaintiff's § 1983 claims against a private hospital because the hospital's mere compliance with the government's peer review requirements did not constitute state action), *aff'd sub nom., Benjamin v. Aroostook Med. Ctr., Inc.*, 113 F.3d 1 (1st Cir. 1997).

entity. The Court therefore concludes that, on the face of the Complaint, Walker has failed to "plead facts that demonstrate a nexus so close 'between the [Commonwealth] and the challenged action of [Mary Washington Healthcare] so that the action of the latter may be fairly treated as that of the [Commonwealth] itself.'" *Crussiah*, 2016 WL 3997315, at *5 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

### B. Walker's Supplemental Allegations Do Not Plausibly Allege That Mary Washington Healthcare Acted Under the Color of State Law

In his Opposition to the Partial Motion to Dismiss, Walker attempts to strengthen his allegations regarding the nexus between Mary Washington Healthcare's conduct and the Commonwealth by asserting specific ways in which Mary Washington Healthcare and the Commonwealth (or various local governments) cooperate. In doing so, Walker relies on facts not set forth in the Complaint. "When matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to exclude the additional material." *Lawson v. Miles*, No. 1:11cv949, 2012 WL 3242349, at *4 (E.D. Va. Aug. 6, 2012) (citations omitted). Even if the Court were to consider Walker's supplemental allegations, which it need not, Walker would still fail to state a claim upon which relief can be granted.

Walker alleges that the city of Fredericksburg, Stafford County, Spotsylvania County, and Caroline County "bring trauma patients to Mary Washington Hospital" in city- and county-owned ambulances. (Pl.'s Opp'n to Def.'s Mot. Dismiss 4.) Walker also asserts that the Commonwealth "flies trauma patients from Mary Washington Hospital to Richmond in a state owned helicopter." (*Id.*) According to Walker, these allegations reflect "a very, very 'close nexus'"—"[m]ore than just money"—that plausibly allege that Mary Washington Healthcare acted under the color of state law. (*Id.*) The Court disagrees.

Walker's new allegations fail to tie the private action he challenges, his terminated employment, to the Commonwealth. As the Fourth Circuit has made clear, "state action may be found if, though only if, there is such a 'close nexus *between the State and the challenged action*' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Mentavlos*, 249 F.3d at 310 (emphasis added) (citation omitted). Walker, however, alleges only a nexus between the Commonwealth and the private entity itself. He fails to show a nexus between the Commonwealth and the challenged action. Thus, even construing Walker's allegations liberally, the Court cannot infer how the use of government-owned vehicles makes Walker's termination as a pharmacist "fairly attributable" to the Commonwealth. *Philips*, 572 F.3d at 182. Accordingly, Walker fails to state a § 1983 claim upon which relief can be granted.

### IV. Conclusion

For the foregoing reasons, the Court will grant Mary Washington Healthcare's Partial Motion to Dismiss. The Court will dismiss Count I. The Court will order Walker to file an amended complaint that sets forth the factual and legal bases for Counts II and III. Failure to file an amended complaint within fifteen (15) days will risk dismissal of this action. An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Date: 9/14/16
Richmond, Virginia

11